UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
BARBARA BURHANS,                           :
                                           :    06 Civ. 8325 (DLC)
                        Plaintiff,         :
            -v-                            :    OPINION AND ORDER
                                           :
COUNTY OF PUTNAM, SHERLITA AMLER, Putnam   :
Commissioner of Health, and PAUL ELDRIDGE, :
Putnam County Personnel Director,          :
                                           :
                        Defendants.        :
-------------------------------------------X

APPEARANCES:

For plaintiff:
Michael D. Diedrich, Jr.
361 Route 210
Stony Point, NY 10980

For defendants:
James A. Randazzo
Gelardi & Randazzo LLP
800 Westchester Avenue, Suite S-608
Rye Brook, NY 10573

DENISE COTE, District Judge:

    Barbara Burhans was employed as a public health nurse with

the County of Putnam (the "County") until May 29, 2008, when she

was fired following a hearing conducted pursuant to § 72 of the

New York Civil Service Law ("NYCSL").  Burhans has sued the

County and two County officials, Sherlita Amler ("Amler"), the

Commissioner of Health, and Paul Eldridge ("Eldridge"), the

Personnel Director, asserting principally that they retaliated

against her due to her expression of concern regarding nursing

services provided by the County's Department of Health

("Department").  For the following reasons, the motion to dismiss is granted in part.

BACKGROUND

The second amended complaint ("Complaint") asserts that from January 2002 to May 29, 2008, Burhans was employed as a public health nurse in the Department's Nursing Division.  From 2003 to 2006, Burhans told the defendants, representatives of the New York State Department of Health ("DOH"), and the Medicaid Fraud Unit of the New York State Office of the Attorney General that the Department was, inter alia, failing to provide competent nursing services and to maintain proper records.

As a result of deficiencies in the Department's operations that were discovered by the DOH during an audit, and in retaliation for Burhans's complaints, the Department took many actions against Burhans, including the following.  It transferred Burhans in February 2005 from the position of Admission Coordinator to nurse-case manager, removed her from weekend rotations and other opportunities for overtime, and did not allow her to use a fax or copy machine.  In March 2005, the Department denied Burhans the opportunity to attend a conference.  In June and July 2005, Department employees gave

2

Burhans warning memoranda and issued verbal warnings to her.  On October 12 and December 7, 2005, pursuant to NYCSL § 75,[1] an attorney interviewed Burhans to investigate her conduct and draft disciplinary charges against her.  In December 2005, the County car that Burhans drove was ransacked and her personal cellular telephone was taken.

In December 2005, the Department initiated proceedings against Burhans pursuant to NYCSL § 72(5).  Section 72(5) provides in pertinent part:

> [I]f the appointing authority determines that there is probable cause to believe that the continued presence of the employee on the job represents a <u>potential danger</u> to persons or property <u>or would severely interfere with operations</u>, <u>it may place such employee on involuntary leave of absence immediately</u>; provided, however that the employee shall be entitled to draw all accumulated unused sick leave, vacation, overtime and other time allowances standing to his or her credit.

NYCSL § 72(5) (emphasis supplied).

---

[1] Section 75 of the NYCSL provides, in part, that certain civil servants "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for <u>incompetency</u> or <u>misconduct</u> shown after a hearing upon stated charges pursuant to this section."  NYCSL § 75(1) (emphasis supplied).  In contrast, NYCSL § 72(5), discussed <u>infra</u>, sets out the procedure for placing a civil servant on leave when the "employee is unable to perform the duties of his or her position by reason of a disability."  NYCSL § 72(1).

By letter dated December 8, Burhans was notified that, based on statements she made to colleagues regarding mistakes "she had been making . . . in relation to patient care" and "near car accidents while operating a County vehicle," the Department had concluded that it had probable cause to place her on involuntary leave pursuant to § 72(5) of the NYCSL.  Burhans was instructed to meet in late December with a psychiatrist retained by the County.

The Complaint explains that the psychiatrist advised Burhans that she was a whistleblower.  Nonetheless, the psychiatrist filed a report finding that Burhans suffered from a major depressive disorder and was unfit to work.  In March 2006, Burhans obtained a second psychiatric evaluation which recommended that she be reinstated.  On March 27, 2006, Burhans exhausted her vacation and sick leave.  As a result, she was unpaid for the remainder of her involuntary leave.

From June 26 through December 11, 2007, a § 72 hearing was conducted concerning Burhans's fitness for employment.  During that hearing, Burhans was served with disciplinary charges under NYCSL § 75.

On April 21, 2008, the hearing officer who conducted the § 72 hearing found that there was probable cause to believe that

4

as of December 8, 2005 Burhans was unable to perform the
essential duties of a registered nurse.  The hearing officer,
however, also found that Burhans should be permitted to return
to work and should receive back pay and benefits (the "April 21
Report").  Amler rejected the recommendation that Burhans be
reinstated, but authorized another psychiatric evaluation of
Burhans.  On May 29, 2008, after Burhans declined to undergo
another psychiatric evaluation, Amler sent Burhans a notice of
termination pursuant to NYCSL § 72(4).[2]

## PROCEDURAL HISTORY

On October 12, 2006, plaintiff filed an action in federal
court against the County and twelve individual defendants.  The
case was assigned to the Honorable Stephen C. Robinson.  On
January 1, 2007, individual defendant Jane Meunier-Gorman was
dismissed from the action with prejudice.  On December 16, 2007,
the remaining defendants filed a motion to dismiss.  This motion
was never decided since, on April 24, 2007, plaintiff filed an

---

[2] Section 72(4) provides, in part, that "[i]f an employee placed
on leave pursuant to [§ 72] is not reinstated within one year
after the date of commencement of such leave, his or her
employment status may be terminated . . . ."  NYCSL § 72(4).

5

amended complaint.  On June 8, 2009, defendants filed a motion
to dismiss the plaintiff's amended complaint.  By an order dated
October 30, 2009, the parties' joint application for the filing
of a second amended complaint was approved.  On December 9,
2009, defendants filed a third motion to dismiss.  That motion
became fully submitted on December 9, 2009.

On November 15, 2010, the case was reassigned to this
Court.  At a conference on December 17, the parties identified
the arguments in the various motion papers that they wished this
Court to consider.


## DISCUSSION

The defendants have moved to dismiss Burhans's federal
claims and have requested that the Court decline to exercise
supplemental jurisdiction over her remaining state law claims.
"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must
contain a 'short and plain statement of the claim showing that
the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129
S.Ct. 1937, 1949 (2009).  For a plaintiff's claim to survive a
motion to dismiss, "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is
plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v.

Twombly*,* 550 U.S. 554, 570 (2007) (citation omitted)).  Applying

this plausibility standard is "a context-specific task that

requires the reviewing court to draw on its judicial experience

and common sense."  Id. at 1950.

A court considering a motion to dismiss pursuant to Rule

12(b)(6) "must accept as true all allegations in the complaint

and draw all reasonable inferences in favor of the non-moving

party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chem.

Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).  A

complaint must do more, however, than offer "naked assertions

devoid of further factual enhancement," and a court is not

"bound to accept as true a legal conclusion couched as a factual

allegation."  Iqbal, 129 S. Ct. at 1949-50 (quoting Twombly, 550

U.S. at 555, 557).

I. Federal Law Claims

Plaintiff currently brings eight claims against the

defendants, five of which appear to be federal law claims.  In

these five federal claims she essentially asserts the violation

of three rights:  that the defendants violated (1) her First

Amendment right to free speech through their retaliatory

conduct, (2) her right to a pre-deprivation hearing before

placing her on involuntary leave pursuant to § 72(5), and (3)

her right to equal protection of the laws based on the protected classes to which her patients belong.

A. First Amendment Claim

Burhans asserts that the defendants retaliated against her, in violation of her right to free speech as protected by the First Amendment of the United States Constitution, because she complained about the quality of nursing care provided by the County and related issues.  The defendants have moved to dismiss this claim on the grounds that Burhans has not pleaded that she engaged in protected speech, that she suffered an adverse employment action as a result of her speech, or that their actions undertaken pursuant to § 72 were substantially motivated by her protected speech.

A First Amendment retaliation claim by a public employee requires plaintiffs to prove at trial that "(1) they engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citation omitted). See also Anemone v. Metro. Transp. Auth., 629 F.3d 97, 114 (2d Cir. 2011).  The Supreme Court addressed the scope of public

employees' First Amendment speech rights in <u>Garcetti v.</u>
<u>Ceballos</u>, 547 U.S. 410 (2006).  As the Court observed, "[w]hen a
citizen enters government service, the citizen by necessity must
accept certain limitations on his or her freedom."  <u>Id</u>. at 418.
Nevertheless, public employees may retain "First Amendment
protection for expressions made at work," and even for
"expressions related to the speaker's job."  <u>Id</u>. at 420-21.  But
"when public employees make statements <u>pursuant to their</u>
<u>official duties</u>," they "are not speaking as citizens for First
Amendment purposes."  <u>Id</u>. at 421 (emphasis supplied).  In these
instances, the employee's speech is not analogous to the speech
of citizens who are not government employees, and therefore,
such speech is not protected by the First Amendment.  <u>Id</u>. at
424.

Courts engage in "an objective inquiry" to determine
whether speech is made pursuant to official duties.  <u>Anemone</u>,
629 F.3d at 116 (citation omitted).  "[S]peech can be pursuant
to a public employee's official job duties even though it is not
required by, or included in, the employee's job description, or
in response to a request by the employer."  <u>Id</u>. (citation
omitted).  And, "without more," an employee's speech pursuant to
his official duties is not "transform[ed]" into the speech of a

9

"private citizen" just because an employee has "persist[ed] in such speech after a supervisor has told him to stop." Id. (citation omitted).

In order to show that the plaintiff experienced an adverse employment action, the plaintiff must demonstrate that the defendants took an action against her that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Id. at 120 n.14 (citation omitted). This standard has been described as "broad" and recognizes that an "adverse employment action can take a wide variety of forms." Id. A plaintiff is not "required to show that the defendants' action had an actual chilling effect." Zelnik v. Fashion Inst. Of Tech., 464 F.3d 217, 226 n.2 (2d Cir. 2006) (citation omitted). Indeed, "[it] is well settled that public employees alleging retaliation for engaging in protected speech are not normally required to demonstrate a chill subsequent to the adverse action taken against them." Id. (citation omitted).

Finally, the third prong requires proof that the protected speech was a substantial motivating factor in the adverse action. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was

close in time to the adverse action."  <u>Espinal v. Goord</u>, 558
F.3d 119, 129 (2d Cir. 2009).  If the plaintiff demonstrates
such a causal connection, however, "the defendant can still
prevail . . . if it can show that it would have taken the same
adverse employment action 'even in the absence of the protected
conduct.'"[3]  <u>Cotarelo v. Village of Sleepy Hollow Police Dep't</u>,
460 F.3d 247, 251-52 (2d Cir. 2006) (citing <u>Mount Healthy City</u>
<u>Sch. Dist. Bd. of Educ. V. Doyle</u>, 429 U.S. 274, 287 (1977))
(summary judgment ruling).

The Complaint asserts that Burhans engaged in
constitutionally protected speech.  The Complaint describes a
series of complaints that the plaintiff made to state agencies
to alert them to the deficiencies she had observed in the
County's operation of its public nursing program.  There is no
basis to find from the face of the Complaint that these
statements were made in the course of or pursuant to the
plaintiff's official duties.  Indeed, the plaintiff asserts that
she "was not required, as part of her job duties/

---

[3] The defendants can also prevail if they show that "the
plaintiff's expression was likely to disrupt the government's
activities and that the harm caused by the disruption outweighs
the value of the plaintiff's expression."  <u>Skehan v. Village of</u>
<u>Mamaroneck</u>, 465 F.3d 96, 106 (2d Cir. 2006) (citation omitted).
The defendants do not argue for dismissal on this ground.

responsibilities, to report intra-departmentally concerns she had regarding the incompetent provision of nursing services by the Department of Health's staff/administration that put at risk patients['] health and safety."  Speech that relates to information acquired in the course of one's duties as a public employee may be protected speech.

The defendants contend that the complaints lodged by the plaintiff are not protected speech because N.Y. Public Health Law, Article 28, required the plaintiff to report abuses of patients in a residential healthcare facility.  Assuming that a complaint made pursuant to the public health law would not qualify as protected speech, the defendants have not shown that the plaintiff's complaints were made pursuant to that law.  As described in the Complaint, the plaintiff's complaints extended beyond issues of physical abuse to patients and concerned patients who were not living in residential healthcare facilities.  Moreover, the defendants do not contend that the plaintiff's complaints were made to the officials authorized to receive complaints pursuant to the public health law.

Defendants' argument that Burhans has not pleaded the existence of adverse employment actions fails as well.  The Complaint identifies a number of actions taken by various

Department employees that Burhans contends were retaliatory including, denying her overtime pay, demoting her from the position of Admission Coordinator to the position of nurse case-manager, prohibiting her from using the Department's fax machine and copy machine, refusing her request to attend a conference at Pace University School of Nursing, initiating disciplinary proceedings against her pursuant to NYCSL § 75, and placing her on involuntary leave pursuant to NYCSL § 72(5).  Several of these actions were sufficiently severe that they would deter an individual in the plaintiff's position and possessing ordinary firmness of character from engaging in the protected activity the Complaint describes.  These include denying her the opportunities for overtime pay that she had previously been given, the official reprimands, and the placement on involuntary leave.  See, e.g. Zelnik, 464 F.3d at 226 ("[A]dverse employment actions include discharge . . . demotion, reduction in pay, and reprimand." (citation omitted)); Skehan, 465 F.3d at 106 ("[T]he institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision.").  Given that at least some of the adverse actions that Burhans identifies are sufficiently severe to support a First Amendment

retaliation claim, it is unnecessary at this stage to determine whether each of them would independently support such a claim.

The defendants are correct, however, that the First Amendment claim must be dismissed to the extent it seeks to recover for the defendants' initiation and prosecution of the § 72(5) proceedings.  Given the independent determination of the hearing officer that there was probable cause to believe as of December 8, 2005 that Burhans was unfit to perform her job, a decision that Burhans did not challenge through the procedures provided under New York State law, plaintiff is unable as a matter of law to establish a causal connection between her protected speech and the defendants' resort to the § 72(5) process.  Thus, the defendants' motion to dismiss the First Amendment claim is granted to the extent that it asserts that the § 72(5) proceedings were retaliatory.

### 1. Qualified Immunity

Amler and Eldridge also contend that the First Amendment retaliation claim against them must be dismissed since their conduct was protected under the doctrine of qualified immunity. "Under qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which
a reasonable person would have known.'" <u>Faghri v. Univ. of
Conn.</u>, 621 F.3d 92, 96 (2d Cir. 2010) (quoting <u>Harlow v.
Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  A right is "clearly
established if it would be clear to a reasonable officer in the
position of the defendant that his conduct was unlawful in the
situation he confronted."  <u>Id</u>. at 96-97 (citing <u>Saucier v. Katz</u>,
533 U.S. 194, 202 (2001)).  This inquiry, in turn, hinges on
"the objective legal reasonableness of the action, assessed in
light of the legal rules that were clearly established at the
time it was taken."  <u>Id</u>. at 97 (citing <u>Pearson v. Callahan</u>, 129
S. Ct. 808, 822 (2009)).  Even if Second Circuit decisions "have
not explicitly held a law or course of conduct to be
unconstitutional, . . . [the] course of conduct will nonetheless
be treated as clearly established if decisions by [the Second
Circuit] clearly foreshadow a particular ruling on the issue."
<u>Scott v. Fischer</u>, 616 F.3d 100, 105 (2d Cir. 2010) (citation
omitted).

It was clearly established in 2005 that a government
employee could not retaliate against a subordinate for engaging
in speech "on matters of public concern."  <u>See</u> <u>Connick v. Myers</u>,
461 U.S. 138, 145 (1983).  Thus, it would not have been

objectively reasonable for Amler and Eldridge to take adverse employment actions against Burhans in retaliation for her repeated notification of state agencies of her concerns regarding the quality of the County's public nursing program. The individual defendants' motion to dismiss based on qualified immunity must be denied.

### 2. Monell Liability

The County alleges that Burhans's retaliation claim against it must be dismissed since she failed to plead that the alleged retaliation took place pursuant to a "municipal policy or custom." Hartline v. Gallo, 546 F.3d 95, 100 (2d Cir. 2008).[4] It is well-established that a municipal entity is not subject to respondeat superior liability under 42 U.S.C. § 1983. Monell, 436 U.S. at 691. "To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." Hartline, 546 F.3d at 103 (citation omitted).

---

[4] A county is equivalent to a municipality for the purpose of Monell liability. Owens v. Haas, 601 F.2d 1242, 1245 n.2 (2d Cir. 1979).

An official has final policymaking authority "if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Anthony v. City of N.Y., 339 F.3d 129, 139 (2d Cir. 2003) (citation omitted). "[T]he question of which municipal officials are final policymakers is one of law, and the question is resolved by looking to relevant state law." Skehan, 465 F.3d at 109; accord Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986).

Burhans contends that Amler, the County's Commissioner of Health, and Eldridge, the Department's Personnel Director, were responsible for the adverse employment actions taken against her. Since the parties have not addressed whether either Amler or Eldridge had final policymaking authority for the County for the adverse employment actions identified by Burhans, the County's motion to dismiss the First Amendment claim is denied.

B. Due Process Claim

Burhans's claim pursuant to the Due Process Clause of the Fourteenth Amendment is addressed to the § 72(5) proceedings that resulted in her being placed on involuntary leave,

specifically the absence of any pre-deprivation hearing.[5]  She asserts both a property interest in continued employment and a liberty interest in her reputation.[6]  Burhans contends that she "was not provided with notice of the accusations against her, nor any opportunity to respond."  She also alleges that the ultimate decisionmaker regarding the § 72 charges -- Amler -- was not impartial.

The defendants move to dismiss the due process claim on the grounds that NYCSL § 72 afforded Burhans all the process that she was due and that, to the extent that there were any deviations from the standard § 72 procedures, a post-deprivation Article 78 hearing provided Burhans a constitutionally adequate remedy.  The defendants are correct, and the due process claim must be dismissed.

---

[5] Although Burhans does not explicitly claim that the termination of her employment violated the Due Process Clause, if she had made such a claim it would also have been dismissed for the reasons described here.

[6] The defendants do not contest that Burhans has stated a constitutionally cognizable property interest in her continued employment, and since there is no reason to distinguish between the liberty and property interests for the remainder of the due process analysis, it is unnecessary to determine whether Burhans has stated a valid liberty interest.

The Fourteenth Amendment requires that state public employees with a property interest in their continued employment be afforded "adequate procedural protections" before being placed on "unpaid sick leave, which is the equivalent of suspen[sion] . . . without pay." O'Connor v. Pierson, 426 F.3d 187, 197 (2d Cir. 2005). When determining what procedural protections are "adequate," the Supreme Court has required courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Faghri, 621 F.3d at 99-100 (citing Matthews v. Eldridge, 424 U.S. 319, 335 (1976)). "[T]he ultimate conclusion about procedural adequacy . . . turns on the full set of pre- and post-deprivation procedures available." O'Connor, 426 F.3d at 197. Where post-deprivation process is concededly adequate, a plaintiff must demonstrate that the "pre-deprivation process was so inadequate that it violated the constitution." Id. at 198. In this context, "[p]re-deprivation process need not be elaborate." Id. (citation omitted). It serves a "limited

19

function" and need only include "notice and the opportunity to respond."  Id.

      At the time that Burhans was placed on involuntary leave pursuant to § 72(5), she received a letter stating the reasons for the Department's decision.  Subsequently, pursuant to § 72(1), Burhans demanded and was afforded a hearing.  The independent hearing officer determined that Burhans had properly been placed on involuntary leave on December 8, 2005.  Amler required Burhans to undergo another psychiatric examination before reinstating her.  Burhans's employment was terminated when Burhans refused to participate in such an examination.  Despite the availability of Article 78 procedures to challenge the decisions by the hearing officer and Amler, Burhans filed no such proceeding.  Indeed, "a successful Article 78 proceeding for reinstatement is a prerequisite to a claim for damages by a discharged public employee."  Finley v. Giacobbe, 79 F.3d 1285, 1292 (2d Cir. 1996).  Combined, these procedures afforded Burhans adequate process to protect her interest in continued employment.  See Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 467 (2d Cir. 2006).

      The Complaint fails to plead a violation of the Due Process Clause.  The Complaint and its recitation of the procedural

history that preceded the termination of Burhans's employment establish that she received all the process she was due.  Cf. Leonard v. Sugarman, 466 F.2d 1366, 1367 (2d Cir. 1972) (holding that due process clause did not require state to provide employee with a hearing before compelling him to undergo a medical examination pursuant to § 72(1)).

Burhans relies on a single case -- Cleveland Bd. of Edu. v. Loudermill, 470 U.S. 532 (1985) -- to support her claim to a pre-deprivation hearing.  In Loudermill, the Supreme Court held that a public employee was entitled to a pre-deprivation hearing before his employment was terminated.  Id. at 542.  Loudermill, however, does not support Burhans's right to a pre-suspension hearing.  Indeed, in Loudermill, the Supreme Court distinguished between termination and suspension, noting that "in those situations where the employer perceives a significant hazard in keeping the employee on the job," it can avoid the delay and administrative burden caused by a pre-deprivation hearing "by suspending [the employee] with pay."  Id. at 544-45.  The due process claim is dismissed.

C. Equal Protection Claim

 Burhans contends that was she denied the equal protection of the law since she was fired in "retaliat[ion]" for her

efforts to "aid public health patients in protected classes."
The Equal Protection Clause of the Fourteenth Amendment
"requires that the government treat all similarly situated
people alike." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir.
2005) (citation omitted).  Significantly, however, "the Equal
Protection Clause does not apply to a public employee asserting
a violation of the Clause based on a 'class of one' theory of
liability." Huth v. Haslun, 598 F.3d 70, 72 n.1 (2d Cir. 2010)
(citation omitted).  Instead, in the public employment context,
the Equal Protection Clause is only implicated when the
"government makes class-based decisions . . . treating distinct
groups of individuals categorically differently." Engquist v.
Or. Dept. of Agric., 553 U.S. 591, 605 (2008).

Burhans does not allege that she was treated differently
based on her membership in a protected class and thus her equal
protection claim must be dismissed.[7]  Attempting to distinguish
her claim from an impermissible "class-of-one" claim, Burhans
alleges that defendants retaliated against her because she
advocated for patients who were members of protected classes.

---

[7] In her motion papers, Burhans notes that as a woman she is a
member of a protected class.  Nothing in the Complaint, however,
asserts that the defendants treated Burhans differently based on
her gender.

Beyond this conclusory allegation, however, nothing in the Complaint suggests that the defendants treated Burhans differently based on the identity of the patients on whose behalf she advocated.[8]  Thus, even if Burhans had standing to assert an equal protection claim on behalf of her patients, her Complaint fails to plead such a claim.  See Rivera-Powell, 470 F.3d at 470 ("a conclusory allegation of discrimination . . . without evidentiary support or allegations of particularized incidents, does not state a valid claim and so cannot withstand a motion to dismiss" (citation omitted)).

II. State Law Claims

Burhans raises three categories of claims pursuant to state law:  (1) claims arising under provisions of the New York State Constitution (the "N.Y. Constitution") that are analogous to the clauses of the federal constitution discussed above; (2) a violation of § 741 of the New York Labor Law ("NYLL"), also known as the Health Care Whistleblower Law (the "Whistleblower Law"); and, (3) a request for review of the County's decision

---

[8] Burhans avers that a Supervising Public Health Nurse for the Department Homecare Program made a number of racist and anti-semitic remarks to Burhans concerning some of the Department's patients.  That individual is not named as a defendant in this action and there is no evidence that these views were shared by any of the named parties.

pursuant to Article 78 of the New York Civil Practice Law and
Rules (the "CPLR").

Defendants move to dismiss these claims on a variety of
grounds.  First, defendants contend that all state law claims
against the County must be dismissed since plaintiff failed to
timely file a notice of claim.  Second, defendants argue that
Burhans is time-barred from pursuing an Article 78 proceeding.
And, finally, defendants assert that Burhans has failed to state
claims arising under the N.Y. Constitution and the Whistleblower
Law against the individual defendants.

A. State Law Claims Against the County

Generally, "in a federal court, state notice-of-claim
statutes apply to <u>state</u>-law claims." <u>Hardy v. N.Y. City Health
& Hosp. Corp.</u>, 164 F.3d 789, 793 (2d Cir. 1999) (citing <u>Felder
v. Casey</u>, 487 U.S. 131, 151 (1988)).  Section 52 of the N.Y.
County Law provides, in part, that

> [a]ny claim . . . against a county for damage . . .
> arising at law or in equity, alleged to have been
> caused or sustained in whole or in part by or because
> of any misfeasance, omission of duty, negligence or
> wrongful act on the part of the county, its officers,
> agents, servants or employees must be made and served
> in compliance with § 50-e of the general municipal
> law.

N.Y. Cnty. § 52(1) (McKinney 2004) (emphasis supplied).  Section
50-e specifies that absent a court-granted extension, a notice

of claim must be filed "within ninety days after the claim arises." N.Y. Gen. Mun. § 50-e(1)(a) (McKinney 2009).

Burhans failed to file a timely notice of claim and therefore all of her state law claims against the County for damages must be dismissed.  By letter dated May 29, 2008, the Department notified the plaintiff that her employment was terminated.  Plaintiff did not file a notice of claim against the County in the succeeding ninety days.

Burhans does not contend that she filed a notice of claim. Instead, she argues that the County has failed to identify a "specific statute" requiring her to file a notice of claim. This argument lacks merit.  The plain text of § 52(1) requires plaintiffs to serve a notice of claim pursuant to § 51-e for all actions to recover "damages" from a County.  See Mills v. Monroe Cnty., 453 N.Y.S.2d 486, 487 (App. Div. 4th Dept. 1982) (applying notice of claim requirement to suit for wrongful discharge).  Due to Burhans's failure to file a timely notice of claim, all of her state law claims for damages against the County are dismissed.

B. Article 78 Proceeding

Burhans requests that this Court review pursuant to Article 78 of the CPLR the Department's decision to place her on

25

involuntary leave on December 5, 2008.  An Article 78 proceeding must be filed in state court "within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact." CPLR Art. 78.  It is unnecessary to address the defendants' argument that the Article 78 claim is time barred since Article 78 is a type of proceeding that is available in state court, and not in federal court.  Finley, 79 F.3d at 1291.  The Article 78 claim is dismissed.

C. N.Y. Constitution Claims

Burhans has not provided any basis to find that her equal protection and due process claims survive under the New York Constitution despite her failure to state a claim under the parallel provisions of the United States Constitution. Consequently, Burhans's claims brought pursuant to Article I, §§ 6, 11 of the New York Constitution providing for due process and equal protection are dismissed.  The motion to dismiss Burhans's freedom of speech claim pursuant to Article I, § 8 of the New York Constitution is similarly granted to the extent it has been granted on the First Amendment claim.

D. Whistleblower Law Claim

Plaintiff alleges that in retaliation for her efforts to bring to the attention of various state agencies the poor quality of the home health care provided by the Department, and in violation of NYLL § 741, the defendants placed Burhans on involuntary leave and later terminated her employment without affording her adequate procedural protections.  Amler and Eldridge contend that Burhans has failed to state a claim pursuant to New York's Whistleblower Law since she has "failed to allege any retaliatory act directly caused by her speech."[9]

Section 741 prohibits employers from taking a "retaliatory action against any employee because the employee . . . discloses or threatens to disclose to a supervisor, or to a public body any activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care."  NYLL § 741(2)(a).  The

---

[9] The memorandum of law in support of defendants' motion to dismiss that was filed on June 8, 2009 -- before Burhans filed her second amended complaint -- also suggested that Burhans was not a "health care professional" within the meaning of § 741. In defendants' November 6, 2009 reply memorandum of law in further support of defendants' motion to dismiss, defendants concede that in her second amended complaint, Burhans stated facts adequate to demonstrate that she is a protected health care professional.

27

statute defines retaliatory action to mean the "discharge, suspension, demotion, penalization or discrimination against an employee, or other adverse employment action taken against an employee in the terms and conditions of employment.  Id. § 741(1)(f).  It also provides that "[i]n any court action brought pursuant to this section, it shall be a defense that the personnel action was predicated upon grounds other than the employee's exercise of any rights protected by this section." Id. § 741(5) (emphasis supplied).

For the same reasons Burhans's First Amendment claim was dismissed to the extent it asserted that the § 72(5) proceedings were undertaken in retaliation for her protected speech, Burhans's § 741 claim must be dismissed.  The hearing officer determined that Burhans was properly placed on involuntary leave on December 8, 2005.  To the extent that Burhans wished to challenge the soundness of that decision or the termination of her employment which followed that decision, she had an opportunity to do so through the filing of an Article 78 proceeding.  Having failed to pursue the procedural remedies that were available to correct any deficiency in the § 72 process, Burhans has forfeited her right to challenge that

determination by the filing of a § 741 claim.  The § 741 claim is dismissed.

### CONCLUSION

The defendants' motion to dismiss the retaliation claims brought pursuant to the First Amendment and Article I, § 8 of the New York Constitution is denied, with the following exceptions.  It is granted to the extent that those claims are premised on the § 72(5) proceedings or the termination of the plaintiff's employment.  The County's motion to dismiss the claim for damages under Article I, § 8 of the New York Constitution is also granted.  The defendants' motion is granted as to all other claims and as to plaintiff's request for reinstatement or any other equitable relief.  As a consequence, the surviving claims are for adverse employment actions taken during 2005, but prior to the commencement of § 72(5) proceedings, in retaliation for the plaintiff's protected speech.

SO ORDERED:

Dated:    New York, New York
          March 25, 2011

                              _____
                              DENISE COTE
                              United States District Judge

29